UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>)<br>v. )<br>)<br>CLIFFORD WELCH, )<br>)<br>DEFENDANT ) | CRIMINAL NO. 2:12-CR-68-DBH-05 |

**DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

On January 4, 2013, I held an evidentiary hearing on the defendant's motion to suppress.[1] At the very close of argument, the defendant's lawyer asserted for the first time that the defendant's search could not qualify as a valid search incident to arrest, because the defendant Welch was never actually arrested.[2] I orally denied the defendant's motion to suppress. Not content with the parties' argument on this late-raised issue, however, I directed counsel to consult 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.4(b) (5th ed. 2012), and the cases cited therein. I granted a week to file any additional briefing on this issue. Both the government and the defendant provided written submissions accordingly. After reviewing the parties' briefing and relevant caselaw, I adhere to my original conclusion that

---

[1] It was a joint hearing with co-defendant Paul Arnott.
[2] This argument contradicted the defendant's previous assertion that he *was* arrested and interrogated in violation of his Miranda rights, see, e.g., Aff. of Clifford Welch in Supp. of Mot. to Suppress ¶ 10 (ECF No. 191-1) ("I was placed under arrest and told by the Officer that drugs were recovered on my person."). Miranda v. Arizona, 384 U.S. 436 (1966).

the defendant Welch was subjected to a lawful de facto arrest and that his search consequently does not violate the Fourth Amendment. The defendant Welch's motion to suppress therefore continues to be **DENIED**.

### FACTUAL BACKGROUND

Around 12:38 PM on December 8, 2011, Scarborough police officer Brian Nappi pulled over the defendant Clifford Welch in what was ostensibly a routine traffic stop based upon a defective brake light in Welch's vehicle. Officer Nappi told Welch and testified in court that he observed Welch reaching toward the center console of the car as he pulled over, that he grew concerned that Welch was trying to conceal something in the vehicle, and that he ordered him out of the car to conduct a patdown for concealed weapons.

In fact, this was no mere traffic stop. Over the preceding weeks, DEA agents and Scarborough police officers had been intercepting calls made to and from the cellular phone number of James Brichetto, a Scarborough resident suspected of conducting illicit drug transactions. The agents overheard numerous conversations related to Brichetto's drug business, and on November 30, 2011, intercepted the first of several such calls from a phone number traced to the defendant. In a series of calls on December 1, the defendant Welch and Brichetto discussed prices and quantities. Brichetto subsequently called Welch to tell him "they're right in the center console thing . . . they're right in a baggy" and instructed him, "just leave the money in there . . . just lock my car." There was no law enforcement intervention in the drug transaction on December 1. On the morning of December 8, the date of the

2

ostensible traffic stop of Welch, Welch called Brichetto again.  Brichetto asked him, "What do you need?", to which Welch replied, "seventy-five."  Brichetto and Welch then agreed to meet around noon "at the track."  Agents overheard another call at 12:05 PM in which Brichetto told Welch he was near Wal-Mart and would be there in a minute.

Around 12:21 PM, DEA agents conducting surveillance at the Scarborough Downs racetrack observed Brichetto's silver pickup truck pull into the parking lot and park next to a green pickup truck.  The silver pickup's driver, whom agents identified as James Brichetto, got out and entered the passenger seat of the green pickup.  Brichetto remained there for several minutes before returning to his own vehicle and departing.  Neither the green pickup occupant nor the silver pickup occupant went into Scarborough Downs. Agents observed the green pickup depart in the same direction as Brichetto not long afterward.  The agents stationed in the parking lot reported the events to other law enforcement on surveillance nearby, including Scarborough police officer Joshua Guay, who observed the green pickup turn onto Route One. Guay in turn relayed all of this information to Officer Nappi, also stationed nearby on Route One.  Guay had already informed Nappi of the ongoing wiretap investigation and the expected transaction between Welch and Brichetto at Scarborough Downs, and had instructed Nappi to find a reason to conduct a traffic stop of the vehicle if possible.

The traffic stop and ensuing Terry[3] patdown on the side of the road were thus, in short, a pretext. Officer Nappi had been instructed to find a basis on which to search Welch's person without giving away the ongoing wiretap investigation and the true reason for the search. Agents did not want members of the drug distribution conspiracy to know they were being watched or listened to, and wanted any discovery of drugs to appear to be a coincidental byproduct of a routine traffic stop.

During the patdown search, Nappi felt a bulge in Welch's pants pocket and asked if Welch could empty his pockets. Welch consented and eventually produced a small plastic bag containing pills. Initially Welch claimed that they were prescription-obtained methadone. After Nappi asked Welch why he had so many pills and told Welch that he would call poison control to identify the pills, Welch admitted that the pills were in fact oxycodone rather than methadone, and that he had purchased the pills from a friend. After explaining the potentially severe charges for possessing oxycodone, Nappi asked Welch if he was willing to cooperate and provide more information. Welch agreed to go to the police station in Nappi's cruiser for further questioning. Nappi told Welch that he would have to undergo a more thorough search of his person before being placed in the back of the cruiser and Welch consented. Nappi then searched Welch and placed him in the back of the cruiser without handcuffs. Welch's own car was towed. Upon arriving at the station, Welch

---

[3] Terry v. Ohio, 392 U.S. 1 (1968).

was brought to the interview room and informed of his Miranda rights before speaking with Officers Nappi and Guay. Miranda v. Arizona, 384 U.S. 436 (1966) Welch was subsequently photographed and fingerprinted, but he was released from the station without any formal charges. Over four months later, on April 25, 2012, Welch was indicted for possession of oxycodone with intent to distribute, conspiring to distribute and possess oxycodone with intent to distribute, and aiding and abetting the conspiracy.

## DISCUSSION

In its response to Welch's motion to suppress, the government argued that the challenged patdown that produced the drugs was valid both as a Terry stop-and-frisk and as a search incident to a lawful arrest. Given the essentially pretextual nature of the Terry stop, I have focused on the latter argument. I have already ruled from the bench that Officer Nappi had probable cause to arrest Welch at the time of the stop because of what the officers and agents collectively heard and observed about Welch-Brichetto drug dealing and the Scarborough racetrack encounter. See United States v. Barnes, 506 F.3d 58, 62 (1st Cir. 2007) (holding that for purposes of determining probable cause, "'the focus is upon the collective knowledge possessed by, and the aggregate information available to, all the officers involved in the investigation'" (citations omitted)). I also ruled that the arrest did not need to precede the search, relying upon United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997) ("[W]hether a formal arrest occurred prior to or followed 'quickly on the heels' of the challenged search does not affect the validity of the search so long as the

probable cause existed prior to the search." (citing Rawlings v. Kentucky, 448 U.S. 98, 111 (1980))). The sole remaining issue, then, is not whether Welch was searched incident to a *lawful* arrest but rather whether he was arrested at all. I also ruled from the bench that Welch was not in custody for Miranda purposes during the "patdown" at the time of the ostensible traffic stop.

Under First Circuit precedent, "a de facto arrest occurs when "'a reasonable man in the suspect's position would have understood his situation,' in the circumstances then obtaining, to be tantamount to being under arrest.'" United States v. Jones, 700 F.3d 615, 624 (1st Cir. 2012) (citing United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994)). Officer Nappi never told the defendant Welch that he was being placed under arrest at the roadside, but the circumstances are sufficient to establish under Jones that the defendant Welch was under de facto arrest when he was placed in Officer Nappi's police cruiser. Although Welch was not handcuffed, he was not permitted to drive his own car to the police station (it was towed). Instead, Welch was searched thoroughly (beyond the earlier "patdown") and then transported to the police station in Officer Nappi's cruiser. There he was advised of his Miranda rights, interviewed, photographed, and fingerprinted before he was released.[4] Although the de facto arrest did not occur until the defendant Welch entered

---

[4] Moreover, the defendant avoided formal arrest only by expressing his willingness to cooperate with the police following the challenged search. Suppressing the fruits of the search would have the perverse effect of penalizing the government for seeking a suspect's cooperation rather than immediately subjecting him to formal arrest and thereby imposing a greater intrusion on his freedom. Cf. Commonwealth v. Washington, 869 N.E.2d 605, 614 (Mass. 2007) ("Thus, where the police have legitimate reason not to arrest an individual, it is illogical to require them to inflict this greater deprivation of liberty 'to justify the lesser intrusion of a search.'" (citing Commonwealth v. Skea, 470 N.E.2d 385, 393 (Mass. App. 1984))).

the police cruiser upon the thorough search—a time later than the challenged "patdown" search—the challenged search was nevertheless valid because the de facto arrest followed shortly thereafter.[5]  See Rawlings, 448 U.S. at 111 (holding that an arrest need not precede a search, so long as the search is quickly followed by an arrest); Bizier, 111 F.3d at 217 (same).

Because the search that produced the drugs was incident to a lawful arrest, the search did not violate the Fourth Amendment.  I therefore continue to **DENY** the defendant Welch's motion to suppress.

**SO ORDERED.**

**DATED THIS 15TH DAY OF JANUARY, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[5] As I noted at the hearing, the record does not reveal actual time lapses.  It is apparent from the testimony, however, that the events transpired quickly and without interruption or delay.